

## NUMBER 13-08-00539-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

FIDENCIO FLORES,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

On appeal from the 156th District Court of Bee County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Yañez**

A jury convicted appellant, Fidencio Flores, of the felony offense of possession of

a deadly weapon in a penal institution[1] and assessed his punishment at fourteen years'

---

[1] *See* TEX. PENAL CODE ANN. § 46.10 (Vernon 2003).  Appellant was also charged with aggravated assault with a deadly weapon.  *See id*. § 22.02 (Vernon Supp. 2008).  The jury charge included a self-defense instruction, which included a "provoking the difficulty" instruction, as to the aggravated assault offense.  The jury found him not guilty of that offense.

imprisonment.[2]  In a single issue, appellant contends the trial court committed reversible error by refusing his request for a self-defense instruction for the possession charge.  We affirm.

## Background

Many of the facts surrounding the offense are not in dispute.  On November 13, 2007, appellant, an inmate in the McConnell Unit of the Texas Department of Criminal Justice, was involved in a fight with Stephen Hernandez, his former cellmate.  Appellant went to Hernandez's cell to retrieve property he believed Hernandez had stolen.  Before visiting Hernandez's cell, appellant placed a lock in the sock he was wearing.[3]  After appellant entered Hernandez's cell, he demanded his property and a fight broke out.  During the fight, Hernandez grabbed appellant and held him in a headlock.  Appellant testified that Hernandez was choking him and he became dizzy.  According to appellant, when he was being choked, he couldn't breathe very well and felt that his "life was in danger."  He believed if Hernandez kept choking him, he would have been killed.  Appellant testified that he saw a razor on the table, grabbed it, cut Hernandez with it, and  Hernandez released him.  Appellant testified that he then flushed the razor down the toilet so he would not be caught with it.  Hernandez testified that appellant must have brought the razor into the cell with him because he first saw it when appellant flushed it down the toilet.  During

---

[2] *See id*. §§ 12.34 (Vernon 2003), 12.42(a)(3) (Vernon Supp. 2008).  The trial court ordered the sentence to run consecutively and commence when appellant's fourteen-year sentence for aggravated assault with a deadly weapon, an unrelated 2003 conviction, ceased to operate.

[3] There was conflicting testimony about the lock.  Appellant testified he brought the lock because if Hernandez was not in his cell, he intended to break the lock on Hernandez's locker, and if his property was not inside, he would leave his lock with Hernandez.  Hernandez testified that when appellant came to his cell, he was holding the lock like a brass knuckle; Hernandez believed appellant intended to use the lock as a weapon.  After the fight started, the lock fell on the floor.

the fight, Hernandez realized that he was becoming weak and had blood dripping off his face, but did not realize he had been cut with a razor.[4]

At the charge conference, appellant requested jury instructions for self-defense and necessity as to both the aggravated assault and possession offenses. The trial court accepted the self-defense instruction as to the assault charge, but denied the self-defense instruction for the possession charge. However, with respect to the possession charge, the court allowed the requested instruction on necessity. Appellant objected to the trial court's refusal to include a self-defense instruction as to the possession charge.

### Standard of Review and Applicable Law

"Our first duty in analyzing a jury-charge issue is to decide whether error exists."[5] If error exists, we then inquire whether the error harmed the defendant.[6] When reviewing a trial court's decision to deny a requested defensive instruction, we view the evidence in the light most favorable to the defendant's requested submission.[7]

Appellant was convicted of possession of a deadly weapon in a penal institution.[8] Under the statute, a person commits an offense if, while confined in a penal institution, the person intentionally, knowingly, or recklessly carries on or about his or her person a deadly weapon, or possesses or conceals a deadly weapon in the penal institution.[9]

---

[4] Hernandez testified that his injuries required fifty-two stitches to his left cheek and thirty-six staples to his head, neck, and back.

[5] *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2006).

[6] *Id.*

[7] *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

[8] *See* TEX. PENAL CODE ANN. § 46.10.

[9] *See id.*

3

"All statutory affirmative defenses 'justify the defendant's admitted participation in the act itself.'"[10] A defendant has a right to a jury instruction on any defensive issue that has been raised by the evidence, regardless of whether the evidence is weak or strong, unimpeachable or contradicted, and regardless of what the trial court may think of its credibility.[11] "This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence."[12] A defendant need not testify in order to raise a defense.[13] Defensive issues may be raised by the testimony of any witnesses, even those called by the State.[14] In deciding whether a defensive theory is raised, the evidence is viewed in the light most favorable to the defense.[15] If the testimony or other evidence viewed in a light most favorable to the defendant does not establish self-defense, an instruction is not required.[16]

Necessity and self-defense are separate defenses.[17] The necessity defense is contained in section 9.22 of the penal code, which states:

Conduct is justified if:

---

[10] *East v. State*, 76 S.W.3d 736, 738 (Tex. App.–Waco 2002, no pet.) (quoting *Sanders v. State*, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986)).

[11] *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001) (citing *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996)).

[12] *Granger*, 3 S.W.3d at 38.

[13] *Boget v. State*, 40 S.W.3d 624, 626 (Tex. App.–San Antonio 2001), *aff'd*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002).

[14] *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd); *Shelvin v. State*, 884 S.W.2d 874, 878 (Tex. App.–Austin 1994, pet. ref'd).

[15] *Granger*, 3 S.W.3d at 38.

[16] *Ferrel*, 55 S.W.3d at 591; *Granger*, 3 S.W.3d at 38.

[17] *Bowen v. State*, 162 S.W.3d 226, 229 (Tex. Crim. App. 2005).

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.[18]

Self-defense is defined in section 9.31(a) of the penal code, which provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."[19] By its express terms, the statute's application is for a defendant accused of using force against another.[20]

**Discussion**

The State argues that the trial court did not err in refusing appellant's requested self-defense instruction regarding his possession offense because force is not an element of

---

[18] *See* TEX. PENAL CODE ANN. § 9.22 (Vernon 2003). Here, appellant received the following necessity instruction as to the possession offense:

> You are instructed that conduct is justified if the defendant reasonably believes the conduct is immediately necessary to avoid imminent harm; and the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct. "Ordinary standards of reasonableness" means the standards that an ordinary and prudent person would apply to the circumstances that the defendant faced.

> Now, if you find from the evidence that the defendant reasonably believed his conduct was immediately necessary to avoid imminent harm, and you further find that the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct, then you should acquit the defendant; or, if you have a reasonable doubt as to whether or not the defendant acted reasonably or the desirability and urgency of avoiding the harm was unreasonable under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict, "not guilty" as to Count 2 in paragraph 6.

[19] *See* TEX. PENAL CODE ANN. § 9.31(a) (Vernon Supp. 2008).

[20] *See id.*

5

possession of a deadly weapon in a penal institution. According to the State, appellant's issue should be overruled because "[t]here is no authority that says self[-]defense is applicable to a possession charge."

Citing *Boget v. State*, appellant argues that self-defense can be asserted when the defendant is accused of an offense not involving the use of force.[21] In *Boget*, the defendant was charged with criminal mischief for breaking a truck's windshield with a flashlight; the defendant offered evidence that the truck had been driving towards him and almost hit him.[22] The court held that "the criminal mischief was part and parcel of [Boget's] 'use of force against another.' In other words, without Boget's use of force[,] there would have been no criminal mischief."[23] Under those circumstances, the *Boget* court held that self-defense could apply to the offense of criminal mischief when the "mischief [arose] out of the accused's use of force against another."[24]

The court contrasted the circumstances in *Boget* to those in *Johnson v. State*.[25] In *Johnson*, the defendant was convicted of unlawfully carrying a handgun on licensed premises.[26] The *Boget* court noted the distinctions between *Boget* and *Johnson* as follows:

---

[21] *See Boget v. State*, 74 S.W.3d 23 (Tex. Crim. App. 2002).

[22] *Id.* at 25.

[23] *Id.* at 27.

[24] *Id.* at 24, 31.

[25] *Id.* at 26 (discussing *Johnson v. State*, 650 S.W.2d 414, 416 (Tex. Crim. App. 1983)).

[26] *See Boget,* 74 S.W.3d at 26 ("The defendant in *Johnson* was involved in a bar-room gun fight and was subsequently convicted of unlawfully carrying a handgun on licensed premises. Johnson had gone to the bar with his girlfriend, who was carrying her handgun. When he entered the bar, Johnson spotted Wilbur Williams. Johnson had previously been in an argument with Williams and heard that Williams was 'after him' with a loaded shotgun and pistol. After Williams told Johnson he wanted to talk to him, Johnson pocketed his girlfriend's gun. Johnson was later attacked by Williams and Williams' brother. Johnson brandished his girlfriend's gun and fired it several times, killing Williams and wounding several others.").

6

Both Boget and Johnson used force against another in response to an alleged attack. Both were charged with an offense other than an offense against the person. But in Boget's case, the criminal mischief was part and parcel of his "use of force against another." In other words, without Boget's use of force[,] there would have been no criminal mischief. In contrast, Johnson's offense did not arise out of his use of force. Even if Johnson had not [used force against the victim], he could have still been charged with carrying a handgun on licensed premises.[27]

In *Johnson*, the court found that Johnson was not entitled to an instruction on self-defense.[28]

The question before us is whether appellant's possession charge was "part and parcel" of his use of force against Hernandez. In other words, as the *Boget* court framed the issue, without appellant's use of force—like the defendant in *Johnson*—could appellant have still been charged with possession?[29] As the court noted, "[t]he relevant inquiry is whether [appellant] directed his force against [Hernandez]."[30]

Appellant testified as follows:

Q [appellant's counsel]: When did you see the razor?

A [appellant]: I was becoming dizzy, and I told him three times to let me go. Naturally I saw a knife of shaving [sic] that he had in the table. I took it, I cut him, he let me go.

Q: When you first saw the razor was he already choking you?

A: Yes.

We conclude that under appellant's version of the facts, his force was directed against Hernandez. Based on appellant's testimony, he "possessed" the razor only long

---

[27] *Boget*, 74 S.W.3d at 27.

[28] *Id.* (citing *Johnson*, 650 S.W.2d at 416.)

[29] *See id.*

[30] *Id.* at 31.

7

enough to cut Hernandez; immediately thereafter, he flushed it down the toilet. Without appellant's use of force, there would have been no possession-of-a-deadly-weapon charge.

In *Bowen v.State*, the court of criminal appeals held that in the context of resisting arrest, the defendant was entitled to a necessity instruction, even though the trial court had submitted an instruction on self-defense.[31] In doing so, the court stated, "[w]e have recognized the independence of separate defenses by holding that a defendant is entitled to the submission of every defensive issue raised by the evidence, even if the defense may be inconsistent with other defenses."[32] Viewing the record in the light most favorable to the defense, we conclude appellant was entitled to a self-defense instruction as to the possession charge.

**Harm**

An erroneous or incomplete jury charge, however, does not result in automatic reversal of a conviction.[33] Properly preserved charge error requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be some harm to the accused from the error.[34] In other words, a properly preserved error will call for reversal as long as the error is not harmless.[35] In making this

---

[31] *Bowen*, 162 S.W.3d at 230.

[32] *Id.*

[33] *Pennington v. State*, 54 S.W.3d 852, 858 (Tex. App.–Fort Worth 2001, pet. ref'd); *see also Fox v. State*, No. 13-03-230-CR, 2006 Tex. App. LEXIS 7898, at *12 (Tex. App.–Corpus Christi 2006, pet. ref'd) (mem. op., not designated for publication).

[34] TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006).

[35] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

8

determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[36] In conducting a harm analysis under *Almanza*, neither party has the burden of proof or persuasion.[37] Rather, "the record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury instruction error."[38] Here, appellant timely objected to the trial court's refusal to submit a self-defense instruction as to his possession charge; thus, his conviction must be reversed if the record shows some harm.[39]

Here, appellant argues that "[t]he harm is apparent in the trial record." Appellant points to two notes that the jury sent to the judge during deliberations. The first note requested a definition of "possession"; the judge provided a definition from the penal code. The jury later sent a second note asking whether, regarding the possession count, appellant was being charged with bringing the razor to Hernandez's cell, or for using the razor, regardless of ownership. The judge directed the jury to make a judgment based on the testimony, evidence, and instructions. According to appellant, this establishes that "[t]he jury was clearly conflicted on convicting [a]ppellant on the possession charge." Appellant makes no other argument and points to no authority establishing that under these circumstances, appellant was harmed by the trial court's refusal to include a self-

---

[36] *Id.*; *see also Ovalle v. State*, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

[37] *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008).

[38] *Id.* (quoting *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005)).

[39] *Almanza*, 686 S.W.2d at 171. We note that the written requested instruction is not included in the record.

defense instruction on the possession charge. We fail to see how a self-defense instruction as to the possession charge would have clarified any confusion the jury may have had regarding the distinction between appellant's bringing the razor to Hernandez's cell or simply using it, regardless of ownership.

The jury received a necessity instruction as to the possession offense, which instructed the jury that if it found that appellant reasonably believed his conduct (possessing a razor long enough to cut Hernandez with it) was immediately necessary to avoid imminent harm (to himself from being choked by Hernandez) and the desirability and urgency of avoiding the harm (to himself) clearly outweighed the harm sought to be prevented by the law proscribing the conduct (possessing a razor in a penal institution), then appellant should be found "not guilty." The jury found appellant guilty of the possession offense. We fail to see how appellant was harmed by the failure to include a self-defense instruction as to the possession offense.

We conclude that the record does not show that appellant suffered actual harm as a consequence of the trial court's refusal to submit a self-defense instruction as to the possession offense. Accordingly, we overrule appellant's issue and affirm the trial court's judgment.[40]

LINDA REYNA YAÑEZ,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 1st day of October, 2009.

---

[40] *See Warner*, 245 S.W.3d at 464.

10